Argued and submitted April 15, reversed and remanded for reconsideration
July 22, 1987

In the Matter of the Education of
A. H.
TOMPKINS,
*Petitioner,*

*v.*

FOREST GROVE SCHOOL DISTRICT #15 et al,
*Respondents.*

(CA A40054)

740 P2d 186

Joseph, C. J., concurred and filed an opinion.

Warden, P. J., filed a dissenting opinion.

Jeanne Kincaid, Oregon Legal Services, Hillsboro, argued the cause and filed the brief for petitioner.

Jerome S. Lidz, Assistant Attorney General, Salem, argued the cause for respondent Verne A. Duncan. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James W. Young, Forest Grove, argued the cause for respondent Forest Grove School District #15. With him on the brief was Bump, Young & Walker, Forest Grove.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

Joseph, C. J., concurring.

Warden, P. J., dissenting.

## VAN HOOMISSEN, J.

This matter arises from a proceeding to determine the adequacy of an Individual Education Program (IEP) developed for petitioner's son. 20 USC § 1415(b)(2); ORS 343.165; ORS 343.175(1), (5). Petitioner seeks review of an order of the Superintendent of Public Instruction (Superintendent)[1] holding that the IEP developed by Forest Grove High School was adequate to meet the child's special educational needs and that that school was the least restrictive environment appropriate for his education. We review for substantial evidence, ORS 183.482(8), and reverse.

The child is fifteen years old and learning disabled. While he was in elementary school, school officials determined that he had a learning disability in math. He had done well in language arts classes up to that time. At the end of his sixth grade year, petitioner and the child met with the elementary and middle school staff to determine what his seventh grade IEP would be. An IEP was designed that would give him individualized special instruction in mathematics. They also discussed the concerns of petitioner and the elementary school staff regarding potential problems he might have in the middle school environment. He had been harassed by other students because of his "effeminate mannerisms." Petitioner and the elementary school staff were concerned that the harassment would be more severe in the larger, more open middle school and that it would have a detrimental effect on the child's education.

The IEP was not implemented until November of the child's seventh grade year. He had been in a regular math class until that time, but was failing. He was removed from the regular class and given specialized instruction in the math resource room. During the next two years, he achieved, on the whole, average grades, although he received D's and F's in some classes. In February of his eighth grade year, petitioner met with the middle school authorities regarding reports that her son made to her about harassment. Until that time, he had not complained to petitioner or to school officials about harassment, although he had experienced problems going to

---

[1] The decision was actually made by a reviewing officer appointed by the Superintendent. ORS 343.175(2).

and from school, in the hallways and in classrooms. There was evidence that two teachers had contributed to the problems and that at least one could not control the class when harassment occurred. Mr. Rodriguez, the principal, was responsive to petitioner's concerns. He spoke to the two teachers and planned to confront the students as well. However, the child was reluctant to provide the names of the students and refused the idea of a meeting with Rodriguez and those students.

Apparently the harassment continued. Petitioner reported that the child had been physically injured on two occasions. He gave Rodriguez the name of one individual. Rodriguez spoke to the student and heard no further complaints. The child did not report any further incidents to school officials His teachers reported that he had trouble remaining "on task" in his classes. He frequently daydreamed or did things other than what he was supposed to be doing. Teachers reported that he often failed to complete his classwork or his homework and that instructions often had to be repeated for him.

In April, 1985, school officials from the middle school and high school met with petitioner to draw up the IEP for the next year. The child was scheduled to enroll in Forest Grove High School in the fall. The learning disabilities specialist from the middle school tested him in several areas. He determined that, although the child had some trouble with language arts, his only learning disability was in math. Petitioner also had him evaluated by a psychologist who determined that he had the potential to do bright normal to superior work. The psychologist also reported that the child lacked self esteem, due to the nonacceptance by his peers and his poor academic performance. The psychologist recommended that he be placed in a school environment where he would be accepted.

The multidisciplinary team established an IEP that included 85 percent of each day in regular classes and 15 percent in the resource room, where there would be special emphasis on assistance in math. They thought that the non-special education basic language arts program at Forest Grove High School, which was designed to help students with writing skills, would meet his needs and that the high school offered the least restrictive environment. The regular courses would be monitored, and counseling would be provided to help him

cope with his sexual identity issues and treatment by his peers.

Petitioner contested the proposed IEP and the recommended placement. She thought that her son needed special education in language arts and that he would experience severe problems if he enrolled in Forest Grove High School. She argued that, because the high school was much larger and even more open than the middle school, because there would be less monitoring of other students' conduct and because the students who had been harassing the child would also be attending Forest Grove High School, the harassment would be worse. She requested a hearing. ORS 343.165.

In the interim, a specialist in learning disabilities, tested the child and found him to have problems in writing skills, including sentence and paragraph structure, spelling, word usage, punctuation and capitalization. Petitioner enrolled the child in a small, private alternative school specializing in education for learning disabled students, where he receives individualized instruction in all classes and where the maximum student to teacher ratio is eight to one. There has been little reported harassment, and he appears to be doing well in school. He likes the school and is reported to have more self esteem.

The hearing was held in November, 1985. The hearings officer issued an order approving the appropriateness of the IEP and the placement decision. She concluded, however, that the evidence regarding the extent of the child's language arts handicap was equivocal and remanded the case to the multidisciplinary team to determine the extent, if any, of that disability. Petitioner sought review of the referee's decision. 34 CFR 300.510; ORS 343.175; OAR 581-15-105.

Pursuant to the statute, the Superintendent appointed a reviewing officer, ORS 343.175(2), and instructed him as follows:

"The reviewing officer is directed to conduct an impartial review, examining the entire record of the local hearing. At the review hearing parent and school district have an opportunity to present written and oral argument, or both. The reviewing officer shall modify, sustain or reverse the decision of the local hearings officer. ORS 343.175(2) & (3).

*"The decision of the local hearings officer shall be reversed only if the reviewing officer finds*

"(a) The hearing decision to be unlawful in substance or procedure, but procedure shall not be cause for reversal unless substantive rights of the appellant were prejudiced; or

"(b) *The hearing decision is not supported by substantial evidence in the record.* OAR 581-15-105"[2] (Emphasis supplied.)

After the hearing, the reviewing officer stated:

"Although there is conflicting testimony in the record as to [the child's] ability and progress in language arts, the testimony is not irreconcilable. A careful review of petitioner exhibits numbers 1, 2, 3, 4, 6, 8, 9, 10, 11 and 12 leads the reviewing officer to conclude that [the child] is *not* learning disabled in language arts."[3] (Emphasis in original.)

He affirmed the referee's decision regarding the IEP and placement at Forest Grove High School.

The Education For All Handicapped Children Act, 20 USC § 1400 *et seq,* was enacted to ensure that all handicapped children have available to them "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 USC §

---

[2] That directive quotes OAR 581-15-105(5), the regulation governing the nature of the review. ORS 343.175, the statute governing review, provides, in relevant part:

"(2) The superintendent shall appoint a reviewing officer pursuant to rules of the State Board of Education. The reviewing officer shall conduct an impartial review, examining the entire record of the hearing and determining whether the procedure at the hearing was consistent with the requirements of law. The reviewing officer may seek additional evidence to be presented if the officer finds the record to be inadequate. The parent and the school district shall be given an opportunity to present written and oral argument, or both.

"(3) At the conclusion of the review, the reviewing officer shall enter a written final order modifying, sustaining or reversing the decision of the hearings officer."

[3] The reviewing officer also made "ultimate findings of fact" regarding whether the IEP was appropriate and whether Forest Grove is an appropriate placement. Those findings suffer from the same problems as the findings regarding the alleged learning disability in language arts. There is more discussion of the facts; however, the statements rely entirely on the referee's findings of fact. In addition, whether the IEP is appropriate is dependent on whether the child is learning disabled in language arts, and whether his placement is appropriate may also be dependent on his learning disability.

1400(c). The act creates statutory rights for handicapped children and specifies the procedures which states must use in providing the appropriate education for handicapped children. Oregon has established such a program. *See* ORS 343.153 *et seq.*

Handicapped children include children who have "specific learning disabilities, who by reason thereof require special education and related services." 20 USC § 1401(1); ORS 343.035(2). Both state and federal laws provide procedures for determining whether a child has a learning disability. ORS 343.153 *et seq*; 34 CFR § 300.340 *et seq.* A multidisciplinary team is chosen to test the child, review academic achievement and make a decision about the child's learning disabilities, special needs and placement. The team develops an IEP for each handicapped child. 34 CFR § 300.342. If a parent disagrees with the child's IEP or the placement, a hearing is held to determine whether an appropriate decision was made. ORS 343.165; 20 USC § 1415(b).

A parent who does not agree with the referee's decision may seek review of that decision by the state educational agency. ORS 343.175; 20 USC § 1415(c). Federal law specifies how that review is to be conducted:

> "If the hearing required by paragraph (2) of subsection (b) of this section is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review *shall make an independent decision* upon completion of such review." 20 USC § 1415(c). (Emphasis supplied.)

34 CFR 300.510, the federal regulation governing the state agency review, provides, in relevant part:

> "(a)   If the hearing is conducted by a public agency other than the State educational agency, any party aggrieved by the findings and decision in the hearing may appeal to the State educational agency.
>
> "(b)   If there is an appeal, the State educational agency shall conduct an impartial review of the hearing. The official conducting the review shall:
>
> "(1)   Examine the entire hearing record;
>
> "(2)   Insure that the procedures at the hearing were consistent with the requirements of due process;

"* * * * *

"(5)  *Make an independent decision on completion of the review;* and

"(6)  Give a copy of written findings and the decision to the parties." (Emphasis supplied.)

However, the state regulation governing the superintendent's review appears to provide for a different standard of review. OAR 581-15-105(5) permits reversal only if the referee's decision is not supported by substantial evidence.[4]

The reviewing officer relied on the Superintendent's directive and the state statute in conducting his review. That review does not comply with the federal statute and regulation. The reviewing officer merely reviewed the referee's decision to determine whether there was substantial evidence in the record to support that decision; he did not make an independent decision based on the record. In addition, his decision does not provide this court with sufficient facts or reasoning to allow us to conduct a meaningful review. After setting out the issues and the parties' arguments, the opinion gives bare "findings of ultimate fact" and conclusions without giving the findings of fact on which the ultimate findings were based. *See* ORS 183.470(2); *Teledyne Wah Chang v. Energy Fac. Siting Council,* 298 Or 240, 255-56, 692 P2d 86 (1984). It also does not provide any reasoning or analysis as to why the ultimate facts led to the conclusions. Simply listing the exhibits which the reviewing officer believes support his conclusion is not sufficient. *Teledyne Wah Chang v. Energy Fac. Siting Council, supra,* 298 Or at 255; *McCann v. OLCC,* 27 Or App 487, 494, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977).[5]

---

[4] The record does not make it entirely clear whether the referee was a member of the local educational agency. However, the Superintendent's directive refers to the first hearing as a "local hearing" and the decision as a "local decision." Therefore, we assume that the reviewing officer was reviewing a local agency ruling.

[5] The dissent states that we have decided this case on an issue not raised by the parties. It is true that petitioner does not cite the statute which defines the superintendent's scope of review. However, the issue of the sufficiency of the superintendent's findings was raised.

Petitioner's first assignment of error is that the superintendent's findings of fact are not supported by substantial evidence. In explaining that assignment she states:

"The Superintendent merely recites 10 pieces of evidence without explanation as to how that evidence supports his ultimate finding. This court therefore cannot review the order for substantial evidence because it is left in the dark as to

Therefore, we remand the case to the Superintendent to conduct an independent review of the record and to make appropriate findings and to provide a reasoned analysis for his conclusions.

Reversed and remanded for reconsideration.

**JOSEPH, C. J.**, concurring.

Because the majority has intelligently and cogently made its way through a swamp of statutes and regulations, I concur. I write separately to express a feeling of unease. The majority opinion rests, at least in part, on two propositions: If there is a conflict between the federal statutes and the federal regulations on the one hand and the state statutes and the state regulations on the other in respect to the educational rights of handicapped children, the federal controls; and the reviewing officer has a duty to make an independent (that is, *de novo*) determination of the appropriateness of a contested IEP. I think that both propositions are correct, but I cannot unreservedly accept either of them because of the linguistic swamp to which I have referred. I can do no more than point out some of the difficulties which the majority, perforce, must pass over more or less quietly.

ORS 343.175(5) provides that, after the reviewing officer has made a decision, "[e]ither the parent or the school district may appeal [*sic*] the order * * * to the Court of Appeals under ORS 183.480." ORS 183.480, in turn, leads to the scope and standards of review in contested cases, ORS 183.482(8), pursuant to which we review for substantial evidence. The problem is that we are reviewing the order of the reviewing officer, and under ORS 343.175(2), "[t]he reviewing officer shall conduct an impartial review, examining the entire record of the hearing and determining *whether the procedure at the*

---

what facts in the record the Superintendent considered in making this finding."

Petitioner relies on *Carr v. AFSD,* 66 Or App 830, 676 P2d 359 (1984), which states that a mere recitation of the evidence without a rational connection to the conclusions drawn is insufficient. Her point was that the order was insufficient for review.

Our review is limited to the reviewing officer's order. Even if there were no *de novo* review requirement in arriving at that order it could not be reviewed because the order merely states bare conclusions without giving the findings on which the ultimate findings were based or explaining how the ultimate findings lead to those conclusions. Petitioner seeks procedural regularity and a properly reasoned and supported order.

*hearing was consistent with the requirements of law."* (Emphasis supplied.) There is nothing in that language (and it is the only language describing what the reviewing officer is supposed to do) that suggests that substantial evidence has anything to do with the only order that we are empowered to review.

The instructions which the Superintendent gave, which are set out in the majority opinion, 86 Or App at 440, told the reviewing officer to review for procedural regularity *and* for substantial evidence. How the Superintendent got the power to broaden the ORS 343.175(2) scope of review is a mystery to me. The majority solves the problem by proceeding on the assumption that Oregon's statutory program for the education of handicapped children was enacted pursuant to the federal Education for All Handicapped Children Act, 20 USC § 1400, *et seq,* and that, therefore, Oregon's statutes have to be read as if they say what the federal statutes and regulations say. That makes practical sense; I find it difficult to accept in principle.[1]

It is a curiosity that the Oregon statutory scheme encompasses only part of the federal scheme. 20 USC § 1415(c) provides for the reviewing officer both to conduct an impartial review *and* to make an independent decision. Moreover, the federal regulation, 34 CFR 300.510, quoted by the majority, 86 Or App at 442, encompasses procedural regularity and substantive validity; the Oregon statute encompasses only procedural regularity. To cap off this situation, OAR 581-15-105 goes beyond and is inconsistent with ORS 343.175.

The majority demonstrates that it is possible to get here from there. Nothing I have written should be understood as criticizing that achievement in any way. However, if in fact the Oregon statute is supposed to track the federal statute, then the legislature ought to make it do so; on the other hand, if tracking the federal statute exactly is not a condition of the validity of the Oregon law, respondents have not told us why not.

---

[1] I note that the definition of "handicapped children" in ORS 343.035(2) is linguistically quite different from the federal definition in 20 USC § 1401(1).

**WARDEN, P. J.,** dissenting.

Because the majority has chosen to reverse the decision of the Superintendent of Public Instruction on a ground not raised by petitioner, I dissent. Nowhere in petitioner's brief has she cited 20 USC § 1415(c), the section on which the majority relies. Neither did she mention it in her oral argument to the court.

It is not the duty of this court to do for them the work that attorneys are paid to do, nor is it fair to the opposing party. Because petitioner did not raise the issue the majority uses as the basis of its decision, she has waived it, and we should not raise it for her in order to reverse the decision of the Superintendent. Accordingly, I respectfully dissent.